## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SARAVANAN RAMALINGAM, M.D. | : | |
| | : | |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| ROBERT PACKER HOSPITAL/GUTHRIE | : | |
| HEALTHCARE SYSTEM AUXILIARY, | : | |
| ROBERT PACKER HOSPITAL, THOMAS | : | ELECTRONICALLY FILED |
| VANDERMEER, M.D., and BURT CAGIR, | : | |
| M.D. | : | NO. 4:17-CV-00216 |
| | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO DISMISS PUNITIVE DAMAGES

### THE PERRY LAW FIRM, L.L.C.

MARK T. PERRY
PA ID 64296
CHRISTIAN J. OWENS
PA ID 315883
305 Linden Street
Scranton, PA  18503
Email:  MTP@theperrylawfirm.com
Email:  Christian@theperrylawfirm.com

# <u>TABLE OF CONTENTS</u>

## <u>Brief</u>

Cover Page

Table of Contents     i

Table of Authorities     ii

List of Exhibits     iv

I. Relevant Background     1

II. Issues Presented     4

III. Legal Analysis     4

    A.  General Standard for Motion *in Limine*     4

    B.  Punitive Damages Must be Tied to Compensatory Damages     5

    C.  Dr. Vandermeer's Actions do not Rise to the Level Necessary for the Imposition of Punitive Damages     9

IV. Conclusion     17

## TABLE OF AUTHORITIES

### CASES

Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995)                   4

Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994)            4

BMW of. Am. v. Gore, 517 U.S. 559, 569 (1996)                                   6

Com. v. Gordon, 438 Pa. Super. 166, 652 A.2d 317 (1994)
 aff'd, 543 Pa. 513, 673 A.2d 866 (1996)                                        5

Commonwealth, Dept. of Transp. v. Pikur Enterprises, Inc.,
142 Pa.Cwmlth. 114, 596 A.2d 1253, 1259 (1991)                                 5

Exxon Shipping Co. v. Baker, 544 U.S. 471, 512 (2008)                          6

Johnson v. Hyundai Motor America, 698 A.2d 631, 639 (Pa.Super. 1997),
*appeal denied*, 712 A.2d 286 (Pa. 1998)                                       9

Phillips v. Cricket Lighters, 188, 883 A.2d 439, 445 (Pa. 2005)               5

Ridolfi v. State Farm Mutual Automobile Insurance Company,
 2017 WL 3198006, *2 (M.D.Pa. July 27, 2017)                                    5

Scampone v. Grane Healthcare Company, 2010 WL 2780315 at * 22,
¶74 (Pa.Super.2010)                                                            5

Schecter v.Watkins, 577 A.2d 585, 595
*appeal denied*, 584 A.2d 320 (Pa. 1990)                                        9

State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003)              5-6

United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017)   4

## **<u>STATUTES</u>**

42 U.S.C.A.  §11112(a)(1)-(4)                                              8

42 U.S.C.A. § 11151                                                       9

## **<u>TREATISES</u>**

Restatement (Second) of Torts § 908(2)                                    9

## **EXHIBITS**

**Exhibit A**: Plaintiff's Complaint

**Exhibit B**: Hon. Judge Brann's Opinion re Defendants' Motion for Summary Judgment (Ramalingam v. RPH, (Brann, J. 8/21/19)).

**Exhibit C**: Letter from Dr. Molinari dated 1/12/15

**Exhibit D**: Original Report and Appendix of Plaintiff-Experts Ronald T. Luke, J.D., Ph.D. and Brian Piper, Ph.D. from Research & Planning Consultant

**Exhibit E**: Rebuttal Report of Plaintiff-Experts Ronald T. Luke, J.D., Ph.D. and Brian Piper, Ph.D. from Research & Planning Consultants

**Exhibit F**: Defense Expert Report/CVs/Index of Mr. Staller and Mr. Dripps from Center for Forensic Studies

**Exhibit G**:  E-mail from Dr. VanderMeer to Dr. Molinari dated 3-21-15

**Exhibit H**: Deposition of Dr. Molinari

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SARAVANAN RAMALINGAM, M.D. | : | |
| | : | |
| Plaintiff, | : | JURY TRIAL DEMANDED |
| | : | |
| v. | : | |
| | : | |
| ROBERT PACKER HOSPITAL/GUTHRIE | : | |
| HEALTHCARE SYSTEM AUXILIARY, | : | |
| ROBERT PACKER HOSPITAL, THOMAS | : | ELECTRONICALLY FILED |
| VANDERMEER, M.D., and BURT CAGIR, | : | |
| M.D. | : | NO. 4:17-CV-00216 |
| Defendants | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION *IN LIMINE* TO DISMISS PUNITIVE DAMAGES**

Defendants, Robert Packer Hospital/Guthrie Healthcare System Auxiliary, Robert Packer Hospital, Thomas VanderMeer, M.D. and Burt Cagir, M.D. by and through their counsel, The Perry Law Firm, L.L.C., hereby file this Memorandum of Law in support of their Motion *in Limine* to Dismiss Punitive Damages.

## I.    RELEVANT BACKGROUND

Plaintiff, Saravanan Ramalingam, M.D., (hereinafter "Dr. Ramalingam" or "Plaintiff") filed his Complaint in the above captioned matter on February 6, 2017. (*See* **Exhibit A**: Plaintiff's Complaint).  Defendants filed a Motion for Summary Judgment on May 1, 2019 to dismiss Plaintiff's Complaint in its entirety under the Health Care Quality Improvement Act and alternatively, to dismiss each individual

cause of action contained in Plaintiff's Complaint[1].  Defendants also sought to dismiss all claims for punitive damages in Plaintiffs' Complaint. Following Defendants' Motion, Judge Brann dismissed Counts I and Count IV of Plaintiff's Complaint. (*See* **Exhibit "B"**: <u>Ramalingam v. RPH</u>, (Brann, J. 8/21/19)).

With regard to punitive damages, the Court held that Plaintiff was not entitled to punitive damages under a theory of promissory estoppel and therefore dismissed punitive damages under that cause of action. (<u>Id</u>. at pg. 18 ¶ 1). However, the Court held that a jury could infer that Dr. Vandermeer acted with sufficient culpability to warrant punitive damages and thus allowed Plaintiff's request for punitive damages to survive the summary judgment stage under Plaintiff's cause of action for Tortious Interference with Contractual/Business Relations.

With regard to Plaintiff's cause of action for Tortious Interference with Contractual/Business Relations, Plaintiff alleges that Defendants wrongfully interfered with Plaintiff's existing business relationships with Dalhousie University and Dr. Michele Molinari by attempting to manipulate Dr. Molinari to terminate the business relationship between Plaintiff and Dalhousie University.

---

[1] Defendants incorporate their Motion for Summary Judgment, Brief in Support thereof and Reply Brief in support thereof and all corresponding exhibits as if fully set forth herein.

However, as set forth in more detail below, no evidence has been produced that Dr. VanderMeer made any false comments to Dr. Molinari. Dr. Molinari specifically testified during his deposition that there were no false or disparaging comments made regarding Dr. Ramalingam by Dr. VanderMeer. The facts as demonstrated through discovery/deposition testimony reflect that Dr. VanderMeer provided Dr. Molinari with truthful information, in follow up to Dr. Molinari's request for information

Defendants respectfully submit that Dr. Ramalingam is not entitled to punitive damages in this matter. First, punitive damages must be tied to compensatory damages. In this matter, for the reasons set forth in the two accompanying Motions *in Limine* to limit Plaintiff's damages, Dr. Ramalingam has not suffered any damages as a result of not completing the fellowship at Dalhousie University. His earnings reflected that he earned substantially more than he would have during his fellowship. Further, his earnings have exceeded what his own economic experts estimate an HPB surgeon can make ($550,000). Further, Defendants have produced expert testimony that reflects Dr. Ramalingam can still practice as an HPB surgeon.

Second, Dr. Vandermeer's actions do not rise to the level necessary for the imposition of punitive damages.

## II.    ISSUE PRESENTED

**SHOULD PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES UNDER PLAINTIFF'S CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL/BUSINESS RELATIONS BE DISMISSED WHEN THE PUNITIVE DAMAGES ARE NOT TIED TO ANY COMPENSATORY DAMAGES?**

*Suggested Answer: Yes.*

**SHOULD PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES UNDER PLAINTIFF'S CAUSE OF ACTION FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL/BUSINESS RELATIONS BE DISMISSED WHEN THE EVIDENCE DOES NOT SUPPORT THE IMPOSITION OF PUNITIVE DAMAGES?**

*Suggested Answer: Yes.*

## III.    LEGAL ANALYSIS

### A.    General Standard for Motions *in Limine*

The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Tartaglione, 228 F.Supp.3d 402, 406 (E.D.Pa. 2017). Evidentiary rulings on motions *in limine* are subject to the trial judge's discretion and are therefore reviewed for an abuse of discretion. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1213 (3d Cir. 1995); Bernardsville Bd. of Educ. v. J.H., 42 F.3d 149, 161 (3d Cir. 1994). "The Court is vested with broad inherent authority to manage its cases, which carries with it the discretion and authority to rule on

4

motions *in limine* prior to trial." Ridolfi v. State Farm Mutual Automobile Insurance Company, 2017 WL 3198006, *2 (M.D.Pa. July 27, 2017) Further, "Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence." *Id*.

Under Pennsylvania law, a motion *in limine* is the appropriate procedure for "obtaining a ruling on the admissibility of evidence prior to or during trial, but before the evidence has been offered."   As such, motions *in limine* serve the function of addressing issues of excluding prejudicial evidence, keeping extraneous issues out of the underlying proceeding, precluding reference to prejudicial matters, or preventing encumbering the record with immaterial matter.   Com. v. Gordon, 438 Pa. Super. 166, 652 A.2d 317 (1994) aff'd, 543 Pa. 513, 673 A.2d 866 (1996); *see also* Commonwealth, Dept. of Transp. v. Pikur Enterprises, Inc., 142 Pa.Cwmlth. 114, 596 A.2d 1253, 1259 (1991).

### B.   <u>Punitive Damages Must be Tied to Compensatory Damages</u>

Punitive damages have been described as "an extreme remedy available in only the most exceptional matters." Scampone v. Grane Healthcare Company, 2010 WL 2780315 at * 22, ¶74 (Pa.Super.2010) (citing Phillips v. Cricket Lighters, 883 A.2d 439, 445 (Pa. 2005)). With regard to the necessary relationship between punitive damages and compensatory damages, in State Farm Mut. Auto. Ins. Co. v.

Campbell, 538 U.S. 408 (2003), the United States Supreme Court expressed "concerns over the imprecise manner in which punitive damages systems are administered," and made clear that reviewing courts must undertake "[e]xacting appellate review" in order to ensure that punitive awards are "based upon an application of law, rather than a decision maker's caprice." 538 U.S. at 417-418. In State Farm, the United States Supreme Court gave the state courts and the federal courts specific direction about how to measure and review such awards for constitutionality. Among other things, the Supreme Court instructed the courts that they must apply "exacting appellate review" Id. at 418. The Court cited to the three guideposts set forth in BMW of. Am. v. Gore, 517 U.S. 559, 569 (1996) in order to assure that punitive damages awards pass constitutional muster: (1) the degree of the reprehensibility of the defendant's misconduct; (2) the ratio between the punitive damages award and the harm suffered by the plaintiff; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed is comparable. The Supreme Court has also noted that an award of punitive damages is usually less than the award of compensatory damages. See Exxon Shipping Co. v. Baker, 544 U.S. 471, 512 (2008).

In the instant matter, for the reasons set forth in Defendants' two accompanying Motions *in Limine* to limit damages which are incorporated as if fully set forth herein: 1) Motion *in Limine* to Limit Plaintiff's Damages Under

Remaining Causes of Action 2) Defendants' Motion *in Limine* to Preclude Plaintiff from Presenting Evidence of Economic Loss, Plaintiff has not suffered any damages as a result of not completing an HPB fellowship at Dalhousie University.

Under a theory of Tortious Interference with Contractual/Business Relations, which is the sole remaining basis for the imposition of punitive damages, Dr. Ramalingam's losses under this cause of action are limited to his "actual financial losses" for the contract/business relation which was allegedly tortiously interfered with by Defendants. This would be the $75,000 (plus an additional $75,000 for the second year), he was set to earn for his fellowship at Dalhousie University. (*See* **Exhibit "C"**: Letter from Dr. Molinari dated 1/12/15)  Plaintiff's own economic expert report reflects he earned substantially more during this two year period. (*See* **Exhibit "D"**: Original Report and Appendix)(*See* **Exhibit "E"**: RPC Rebuttal Report).  Specifically, a review of Dr. Ramalingam's own expert report reflects that he earned $101,457 in 2015 and $403,226 in 2016, thereby offsetting this alleged $75,000 loss. (See **Exhibits "D"** and **"E"**).

Should the Court allow Plaintiff to seek future economic loss under this cause of action, Plaintiff has failed to demonstrate any future economic loss. Plaintiff's economic expert report bases Plaintiff's purported economic loss on acceptance of a position with an annual salary of $425,000. Plaintiff's experts acknowledge they do not have documentation to support that Dr. Ramalingam has

accepted this position. Defendants have requested this documentation from Plaintiff on multiple occasions but have not received any documentation supporting that Dr. Ramalingam has indeed accepted this position, which would be a substantial pay cut from his past history of earnings. Without this documentation or information, Plaintiff has not produced "sufficient data from which damages can be assessed with reasonable certainty."

Instead, Plaintiff recently produced documentation that does not reflect that Dr. Ramalingam is limited to a position earning $425,000 per year. Instead, the documentation produced with regard to his 2020 earnings reflects he earned $749,328.03 in 2020. Additionally, Defendants have produced an economic report from Chad Staller and Stephen M. Dripps from the Center for Forensic Economic Studies in Philadelphia. (See **Exhibit "F"**: Report/CVs/Index of Mr. Staller and Mr. Dripps).  Mr. Staller/Mr. Dripp's report reflects that Dr. Ramalingams's economic loss is zero.

Therefore, since Plaintiff has no avenue to recover compensatory damages, there is no way an award of punitive damages could pass constitutional muster under the tests set forth in Gore and State Farm supra. The ratio between the punitive damages award and the harm suffered by the plaintiff is non-existent as plaintiff has not suffered any harm. If punitive damages were submitted to the jury,

this would be the sole basis of damages for their consideration, which would be inconsistent with the <u>State Farm</u> and <u>Gore</u> cases set forth above.

### C.   Dr. Vandermeer's Actions do not Rise to the Level Necessary for the Imposition of Punitive Damages

Punitive Damages can only be awarded to "punish outrageous and egregious conduct done in a reckless disregard of another's rights." <u>Johnson v. Hyundai Motor America,</u> 698 A.2d 631, 639 (Pa.Super. 1997), *appeal denied*, 712 A.2d 286 (Pa. 1998); *see also* <u>Schecter v.Watkins</u>*,* 577 A.2d 585, 595, *appeal denied*, 584 A.2d 320 (Pa. 1990); <u>Restatement (Second) of Torts § 908(2)</u>. This "element of outrage [must be] similar to that usually found in crime." <u>Restatement (Second) of Torts § 908 comment b</u>. As a result, punitive damages cannot be awarded "merely because a tort has been committed." The Restatement (Second) of Torts, Section 908(2) provides that that punitive damages are only to be awarded for conduct which is outrageous, either because of the defendant's evil motive or because of a reckless indifference to the rights of others.

Under Dr. Ramalingam's cause of action for Tortious Interference with Contractual/Business Relations, Dr. Ramalingam alleges that Defendants wrongfully interfered with his existing business relationship i.e. his agreement to participate in a fellowship with Dalhousie University under the direction of Dr. Molinari. Dr. Ramalingam alleges Defendants knowingly acted to eliminate Dr.

Ramalingam as a future competitor in the HPB surgery market. *(***Exhibit "A"** at ¶ 70-73*)*.

While Defendants acknowledge that a general argument with regard to punitive damages was previously raised at the summary judgment stage, this Court's opinion limited the avenue for punitive damages to a single cause of action.  Defendants respectfully submit that this specific cause of action for tortious interference with business/contractual relations and the facts accompanying that cause of action do not rise to the level necessary for the imposition of punitive damages.

Specifically, this cause of action focuses on Dr. Vandermeer's communication with Dr. Molinari. The communication does not rise to the level necessary for the imposition of punitive damages. The communication between Dr. Molinari and RPH and Dr. VanderMeer was limited and completely appropriate. Defendants respectfully submit that the evidence before the Court at this time precludes the jury from finding that Dr. Vandermeer acted with sufficient culpability to warrant punitive damages.

After unsuccessfully encouraging Dr. Ramalingam to contact Dr. Molinari about the delay in his graduation date, on March 21, 2015, Dr. VanderMeer e-mailed Dr. Molinari, the HPB program director at Dalhousie University, regarding the RPC's decision that Dr. Ramalingam would not graduate in June 2015. (*See*

**Exhibit G**: E-mail from Dr. VanderMeer to Dr. Molinari dated 3-21-15).  The text

of the email is as follows:

From:  Thomas VanderMeer/GUTHRIE
To:      Michele.molinari@cdha.nshealth.ca,
Cc:     LAURA WARNER/GUTHRIE@GUTHRIE, Douglas Trostle/GUTHRIE@GUTHRIE
Date:   3/21/2015 02:12 PM
Subject:  Dr. Ramalingam

Hi Michele,

I'm sorry to have to tell you this but our Promotions Committee decided that Dr. Ramalingam
will not graduate in June.

This was a very difficult decision because we all recognize what wonderful opportunities your
fellowship offers him.

From our perspective, he does have the option to start the fellowship in July as scheduled and
then return to complete his general surgery training later.

Dr. Ramalingam has filed a grievance that could potentially overturn this decision and the
decision of the Grievance Committee should be made in the next 3-4 weeks.

Again, I'm sorry about the trouble that this might cause to your program but I felt that you
should know what is happening in the event that you need to plan or could help develop options
for him.

Please give me a call (XXX-XXX-XXXX) if I can help.

--Tom

(Id).

Dr. Molinari was deposed and gave further insight into this email.  He

testified that he spoke with Dr. Ramalingam at the American Hepato-Pancreato-

Biliary ("AHPB") Conference in Miami in March 2015. (See **Exhibit H**:

Deposition of Dr. Molinari pg. 27:1-14). Dr. Molinari believes that he and Dr.

Ramalingam may have spoken about his delayed graduation at this time (Id. at 43:9-13).

Dr. Molinari did not know and had never spoken with Dr. VanderMeer prior to calling him about Dr. Ramalingam's application in March 2015. (Id. at 24:23-24:1-2), and had no communication with Dr. VanderMeer at any time related to any subject other than Dr. Ramalingam. (Id. at 25:12-15).  The March 21, 2015 email was the first written exchange between Dr. VanderMeer and Dr. Molinari. (Id. at 34:2-4).

Dr. Molinari testified that the email from Dr. Vandermeer was sent in follow-up to their initial conversation.  Dr. Molinari believes the initial conversation took place before Dr. VanderMeer's email when Dr. Molinari called Dr. VanderMeer to better understand Ramalingam's situation as they were getting close to June 2015. (Id. at 32:10-32:14).  Dr. Molinari understood that it was unclear that graduation would occur and he explained to Dr. VanderMeer that, in Canada, a fellowship candidate needed a license to practice medicine before they could finalize immigration issues and begin the fellowship. (Id. at 32:17-33:14).

Dr. Molinari had informed Dr. VanderMeer that he needed a decision "as soon as possible" because the process of application for medical licensing in Nova Scotia took about four to five months. (Id. at 34:8-19).  During their initial phone call, Dr. VanderMeer told him that Dr. Ramalingam was working to complete his

required rotations, one of which was pediatrics. (Id. at 34:20-35:7).  Dr.

VanderMeer said he planned to help Dr. Ramalingam as much as possible, but

could not guarantee that he would graduate by June. (Id).  VanderMeer told him

that although he was Program Director, the decision to advance Dr. Ramalingam

was not his sole decision, but was made by a committee composed of the

program's faculty. (Id. at 35:8-17). Dr. VanderMeer informed Molinari that Dr.

Ramalingam was not graduating because of his inability to complete surgical

rotations and a minimum case volume. (Id). Significantly, Dr. VanderMeer never

said anything that "was problematic with respect to Dr. Ramalingam." (Id. at

35:23-36:5).  He did not tell Dr. Molinari he had any personal problems with Dr.

Ramalingam - - which Dr. Molinari explained would have been a "red flag." (Id).

Dr. VanderMeer did not tell Dr. Molinari that he thought Dr. Ramalingam was

intellectually dishonest. (Id. at 37:25-38:5).

Although Dr. VanderMeer explained that RPH would allow Dr. Ramalingam

to return and complete his residency following his fellowship, Dalhousie

University was unable to approve his position if he did not graduate. (Id. at 37:4-

10). Dr. Molinari explained that Dalhousie's decision had nothing to do with the

ACGME position regarding case volume requirements. (Id. at 40:1-7)  It had to do

with rules pertaining to Dalhousie Hospital, and the licensing of Nova Scotia

College. (Id).

The second and final phone call was also initiated by Dr. Molinari after receipt of the March 21, 2015 email. (Id. at 38:9-39:8). Dr. VanderMeer stated that he was not able to graduate Dr. Ramalingam because the Promotions Committee decided not to promote Dr. Ramalingam. (Id. at 39:13-40:1).

According to Dr. Molinari's recollection, Dr. VanderMeer's description of the rationale of the Resident Promotions Committee was vague. (Id. at 40:8- 42:7). His impression was that Dr. VanderMeer had not directly observed incompetent behavior, but he was provided feedback from other individuals. (Id). He said on the phone there were some staff that mentioned "one rotation, he was not up to par and then that basically occurred, I don't remember which month, it was just before the committee met. I don't remember what was the real event that caused this decision because he didn't give me details about specifics." (Id. at 40:24-41:1)  He recalled one case in an M&M conference setting. (Id. at 41:2-42:3).  Dr. Molinari did not personally challenge Dr. VanderMeer regarding the decision of the Committee on the phone.  Significantly, nothing he learned in the telephone calls with Dr. VanderMeer caused him to revoke his fellowship to Dr. Ramalingam.  The only reason he had it revoked was based purely on his qualifications, specifically, that he would not graduate in July 2015. (Id. at 42:4-7).

Dr. Molinari received an email and follow-up call from Dr. Casos. (Id. at 45:2-9).  Dr. Casos told Dr. Molinari he had an impression that there was some

bias against Dr. Ramalingam and he felt that Dr. Ramalingam was a very good resident. (Id. at 46:24-47:12).   He felt he was probably treated unfairly by the Promotions Committee and he was working to solve the problem. (Id). He believed that there were some problems and contentions between the program director and Ramalingam.  Dr. Casos tried to steer the Committee in a different direction. (Id. at 47:10-12).  Dr. Molinari does not recall ever speaking to Dr. VanderMeer regarding any personal difficulties between Ramalingam and Dr. VanderMeer. (Id. at 47:13-16).   He was informed that Dr. Ramalingam had filed an appeal with respect to the actions of the residents Programs Committee, and agreed to Dr. Casos' request to wait to take any action on the HPB fellowship until the appeal was heard. (Id. at 47:17-48:1).

Dr. VanderMeer did not mention anything about personal difficulties with Dr. Ramalingam. (Id. at 50:18-51:4)  He mentioned as a program director, he was concerned, but not on a personal level. (Id). Dr. Molinari did not ever follow-up with Dr. VanderMeer for his side of the story after speaking with Dr. Casos. (Id. at 51:5-16).  Dr. VanderMeer never gave a negative assessment about Dr. Ramalingam; Dr. Molinari described it as an objective report of a Program Director regarding feedback from faculty. (Id. at 51:17-23)

Dr. Molinari stated emphatically that Dr. VanderMeer never contacted him other than the 3/21/15 e-mail. (Id. at 56:9-16). Dr. Molinari told him they could not

retain someone who is not graduating. (Id. at 62:16-22)  There was nothing else that Dr. VanderMeer said to affect Dr. Molinari's decision to reject Dr. Ramalingam's application for a fellowship position. (Id. at 63:23-64:3).

As stated above, for punitive damages to be awarded, the conduct of the Defendants must be demonstrated to be outrageous, with a bad motive or reckless indifference to the interest of others. Not only was the communication between Dr. VanderMeer and Dr. Molinari regarding the progress of Dr. Ramalingam not outrageous, it was in response to a request for information by Dr. Molinari. Dr. VanderMeer did not have a bad motive in responding to Dr. Molinari's request for information. Instead, his motive was to provide Dr. Molinari with the requested information that that Dr. Ramalingam would not graduate in June 2015. Dr. Vandermeer testified that he needed "in good conscience" to inform Dr. Molinari of this information. (See **Exhibit "I"**: Deposition pages of Dr. Vandermeer pg. 60: 17-61:3). There was no "evil motive" that is necessary for the imposition of punitive damages.

Dr. VanderMeer had no animus toward Dr. Ramalingam in communicating this factually accurate information to Dr. Molinari; he was acting professionally in his role as Program Director by providing Dr. Molinari with information as to the status of his fellowship candidate. In fact, in his e-mail to Dr. Molinari, Dr. VanderMeer provides potential alternatives to mitigate any inconvenience the

delay in graduation may cause; he offered the possibility that Dr. Ramalingam could start the fellowship at Dalhousie University as scheduled and return to RPH afterward to complete his general surgery residency training at a later date. This is not the type of conduct warranting the imposition of punitive damages.

## IV.   <u>CONCLUSION</u>

Based on the foregoing reasons, Defendants respectfully request that instant Motion *in Limine* be granted.

Respectfully submitted,

**THE PERRY LAW FIRM, L.L.C.**

By:   <u>/s/ Mark T. Perry</u>
      MARK T. PERRY, ESQUIRE
      PA. ID 64296
      MTP@theperrylawfirm.com

Date:  August 2, 2021